IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV469-03-MU

| | |
|---|---|
| WILLIAM N. RAYNOR, | ) |
| Plaintiff, | ) |
| v. | ) **O R D E R** |
| RICK JACKSON; BILLIE J. WEAVER; AND HATTIE PIMPONG | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint under 42 U.S.C. § 1983, filed November 14, 2006 (Document No. 1.)

Plaintiff alleges in his Complaint against Rick Jackson, Superintendent of Lanesboro Correctional, Billie Weaver, Disciplinary Hearing Officer and Hattie Pimpong, Chief Disciplinary Hearing Officer that his Fourteenth Amendment rights were violated by Defendants because he was found guilty of an assault on a fellow inmate when the only evidence against him was information provided by a confidential informant. Additionally, Plaintiff contends that his due process rights were further violated by the fact that he requested that a videotape from the room that the assault occurred be viewed to prove his innocence and that request was denied due to the fact that "security tapes are confidential and can not be viewed by inmates." (Ex. 9 to Complaint.)

**I. FACTUAL BACKGROUND**

Plaintiff's Complaint and supporting documents establish that inmate John Aron was assaulted ON May 29, 2006. Plaintiff contends that when the assault occurred, he was preparing

1

food for himself and two other inmates. Plaintiff remained where he was until correctional officers entered the cell block and directed the inmates back to their cells. Shortly after Plaintiff went back to his cell, correctional officers came to his cell, handcuffed him and explained that he was going to segregation for fifteen days pending an investigation of the assault. On June 8, 2006, Plaintiff was served with a notice of rule violation and disciplinary rights. Plaintiff made a statement on his own behalf and requested that the videotape of the F-block, Richmond Unit from May 29, 2006 be provided as evidence on his behalf at his hearing. On June 22, 2006 Plaintiff went to his disciplinary hearing and before the hearing even began, Disciplinary Hearing Officer Weaver essentially said she thought Plaintiff was guilty. Plaintiff plead not guilty to assaulting inmate Aron, but was found guilty based on information provided by a confidential informant coupled with the fact that Plaintiff was bleeding from above his right eye with blood also on his shirt when correctional officers went to his cell after the assault. On June 23, 2006, Plaintiff sent a letter appealing the Disciplinary Officer's finding of guilt and on a reinvestigation was ordered on August 25, 2006 in order to determine the credibility of the confidential informant. On June 25, 2006 and again on July 10, 2006, Plaintiff filed an inmate request for information asking that the video recording of the F-block from May 29, 2006 be provided to the disciplinary hearing officer for his hearing or be viewed by staff to determined his innocense of the assault charge. On June 29, 2006 Plaintiff received a response to his request stating that "confidential information as well as security concerns at Lanesboro Corr[ectional] Inst[itution] can not be viewed at disciplinary hearings for inmates to see." (Ex. 8 to Plaintiff's Complaint.) On July 11, 2006 Plaintiff received a second response to his second request for production or viewing of the videotape which stated that "[t]hese security tapes are confidential and can not be viewed by inmates." (Exhibit 9 to Plaintiff's Complaint.)

2

On August 25, 2006 a second hearing was held. Disciplinary Hearing Officer Weaver determined that the confidential informant was reliable because that person had first hand knowledge of the incident and because there was physical evidence to support the assault in that Plaintiff was found after the assault by Sergeant Norman in his cell bleeding from above his right eye and with blood on his shirt. Disciplinary Hearing Officer Weaver determined that the evidence naming Plaintiff as being involved in the assault was sufficient to support the charge. Plaintiff again appealed the disciplinary officers decision. On September 14, 2006 Plaintiff learned that his appeal had been denied. On September 19, 2006 Plaintiff went before the Director's Classification Committee and was given maximum control for the aggravated assault which consists of "24 and 23 hours of lockdown for 180 days/6 months." (Complaint at 8.)

By way of relief, Plaintiff asks this Court to award punitive damages against Ms. Billie Weaver in the amount of $75,000.00 and compensatory damages in the amount of $25,000.00. Plaintiff asks for nominal damages against Superintendent Rick Jackson in the amount of $5,000.00 and compensatory damages in the amount of $5,000.00. Plaintiff also asks for $50,000.00 in punitive damages from Ms. Pimpong and compensatory damages in the amount of $15,000.00. Further, Plaintiff asks fro an injunction order against Superintendent Rick Jackson directing him to remove Plaintiff from maximum control and intensive control and to be placed back in the general population and to grant an injunction against Lanesboro Correction Institution preventing the use of confidential informant statements as the only evidence in a disciplinary hearing.

## II ANALYSIS

The Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) held that when a liberty interest is at issue, certain procedural safeguards must be followed. The Supreme Court has gone

3

on to state however, that not all punishment that a prisoner may receive is subject to the procedural safeguards of Wolff. Instead, a prisoner must establish that his punishment is "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472 (1995). The Court admitted that "prisoners do not shed all constitutional rights at the prison gate," Wolff, 418 U.S. at 555, but stated that "'lawful incarceration brings about the necessary withdrawal or limitations of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Jones, 433 U.S. at 125, quoting Price v. Johnston, 334 U.S. 266 (1948). The Court concluded that "[d]iscipline by prison officials in response to wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485 (1995) (holding that segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest). The Court has also stated that a decision by a disciplinary board to revoke good-time credits passes scrutiny under the Due Process Claus if there is some evidence in the record to support the conclusions. Superintendent, Mass. Correctional Inst. V. Hill, 472 U.S. 445, 454 (1985). Federal Courts will not review the entire record, weigh evidence or assess witness credibility. Id. at 455-56. A disciplinary board's findings will be disturbed only when unsupported by any evidence or wholly arbitrary and capricious. Id. at 457; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990) (record of prison disciplinary hearing need not establish reliability of confidential informant to meet "some evidence" standard.)

    Plaintiff's two main arguments that he believes support his claim that his due process rights were violated are that 1) by her comments to Plaintiff, the hearing officer seemed predisposed to find Plaintiff guilty and 2) his due process rights were violated because a videotape that may have proven

4

his claim on innocense was not permitted as evidence during the disciplinary process. Assuming that for the moment that Plaintiff has established that a liberty interest of the type discussed in Wolff is at stake, Plaintiff has received the due process to which he is entitled. Plaintiff concedes that he was served with a notice of the charge against him, made a statement on his behalf, received an initial hearing on the charge and received a second hearing following his appeal of the decision of the first hearing. The Court finds, as outlined in Superintendent, Mass. Corrrectional Institution v. Hill, that there was "some evidence" to support the decisions of the disciplinary officer in that Plaintiff was found in his cell following the assault bleeding from above his eye and with blood on his shirt coupled with the fact that a confidential informant stated that Plaintiff played a role in the assault of John Aron. Id. at 454. While it might have been better for the videotape from May 29, 2006 of the F-block, to the extent it exists, to have been viewed in connection with Plaintiff's discipline for an assault on inmate John Aron, this Court is not going to order that it must be done now, especially given that there was "some evidence" supporting a conclusion that Plaintiff was involved in the assault. Given that there was some evidence to support the finding of Plaintiff's guilt which then passes scrutiny under the Due Process Clause, the Court will dismiss this action.

After careful review of the Plaintiff's Complaint and the supporting documents, the undersigned finds that there is some evidence to support the hearing officer's decision of Plaintiff's guilt and as such Plaintiff received the due process to which he was entitled. Plaintiff's Complaint shall be dismissed for failure to state a claim for relief.

## **ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED that** Plaintiff's Complaint is dismissed.

**SO ORDERED**.

Signed: November 20, 2006

Graham C. Mullen
United States District Judge